## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| John Ewing, | : | Case No. 1:10CV1630 |
| Plaintiff, | : | |
| v. | : | **MEMORANDUM   DECISION AND ORDER** |
| Commissioner of Social Security**,** | : | |
| Defendant. | : | |

Plaintiff seeks judicial review, pursuant to 42 U. S. C. § 405(g), of Defendant's final determination denying his claim for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (Act) and for Supplemental Security Income (SSI) under Title XVI of the Act. Pending are the parties' Briefs on the Merits and Plaintiff's Reply (Docket Nos. 14, 19 & 20). For the reasons that follow, the Commissioner's decision is affirmed.

### I. PROCEDURAL BACKGROUND.

On February 3, 2005, Plaintiff filed an application for DIB alleging that he was unable to work because of the onset of his disabling condition on May 1, 2004 (Tr. 56-58). The applications were denied initially and on reconsideration (Tr. 39-42; 43-46, 47-48). Plaintiff's claim for SSI was denied initially and upon reconsideration (Tr. 354-356; 358-360). Plaintiff filed a timely

request for hearing and on February 11, 2008, Administrative Law Judge (ALJ) Mark Carissimi held a hearing at which Plaintiff, represented by counsel, and Vocational Expert (VE) Carol Mosley attended and testified (Tr. 364-409). On April 11, 2008, ALJ Carissimi issued an unfavorable decision (Tr. 12-23). On July 9, 2010, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner (Tr. 5-7). Plaintiff filed a timely complaint in this Court seeking judicial review (Docket No. 1).

## II. FACTUAL BACKGROUND.

### A. PLAINTIFF'S TESTIMONY.

At the time of the hearing, Plaintiff was 44 years of age. He could write but had difficulty reading a newspaper or job application. Plaintiff lived with his niece and her boyfriend in a home inherited by Plaintiff and his siblings from their mother (Tr. 370, 391, 392). Plaintiff claimed that he had maintained sobriety for one year (Tr. 384).

Plaintiff's relevant employment history included work as an industrial cleaner, assembler and machine operator. In the capacity of industrial cleaner, Plaintiff traveled to different states when working as an industrial cleaner for a steel mill plant. Ninety percent of his time was spent standing and walking. Lifting was minimal. He worked up to fifteen hours daily (Tr. 375, 376, 377). In the capacity of an assembler, Plaintiff worked on an assembly line stacking parts. He did not lift more than twenty pounds in performing this job (Tr. 379). As a hydro press operator, Plaintiff sat and used his feet to operate controls. The parts that he pressed weighed no more than five pounds. He was laid off (Tr. 380-381).

Plaintiff last worked from November 2007 through a staffing agency called Spherion for forty hours weekly. The actual work site was at Ohio Metal. Plaintiff stood all day, everyday

2

loading and unloading crates weighing up to forty pounds from trucks.  Plaintiff was fired from this job at the end of December 2007 for absenteeism.

After his stint with Spherion, Plaintiff was unable to sustain a job for more than sixty days. His hands and feet would swell, causing absenteeism for a week at a time.  When he returned, generally, he was discharged (Tr. 370-374).

With respect to his physical impairments, Plaintiff was diagnosed with gout, a condition characterized by inflammatory arthritis in the ankles, feet and hands.  Alcohol and diet were instrumental in causing flare-ups at least three times per month.  The symptoms then persisted for another month (Tr. 383, 385).  The gout pains were excruciating but decreased minimally when Plaintiff changed his diet (Tr. 386, 389).  To treat the symptoms, Plaintiff took several Aleve tablets daily (Tr. 383-384, 389).

Plaintiff did the vacuuming and washed the dishes.  His niece did the laundry.  His niece's boyfriend mowed the lawn (Tr. 394).

**B.    VE TESTIMONY.**

The VE opined that Plaintiff's past relevant work included similar types of duties including cleaning or industrial or maintenance.  The hypothetical question posed to the VE included:  (1) a 40 year-old, (2) with a high school education who could (3) lift up to twenty pounds occasionally and ten pounds frequently, (4) occasionally climb using a ramp or stairs, (5) frequently stoop, (6) frequently kneel, (7) occasionally crouch, (8) frequently crawl, (8) bilaterally handle, finger and feel, (9) perform simple routine work with no high production quotas or piece work; and (10) engage in superficial interaction with co-workers.  This hypothetical claimant could not perform Plaintiff's past relevant work (Tr. 406).  The VE opined that subject to an amount of lapsed time

taken to learn specific vocations, there were jobs available in the national and state economies that the hypothetical claimant could perform:

| Job | Dictionary of Occupational Titles (DOT) Number | National Availability | State Availability | Specific vocational preparation |
|---|---|---|---|---|
| Dishwasher | 318.687-010 | 450,000 | 3,500 | Anything beyond a short demonstration up to and including one month |
| Office Cleaner | 323.687-018 | 500,000 | 4,000 | Anything beyond a short demonstration up to and including one month |
| Packer | 920.587-018 | 550,000 | 4,500 | Anything beyond a short demonstration up to and including one month |

In the second hypothetical, the ALJ asked that the VE consider that because of pain, the hypothetical claimant would not sustain work completely and because of pain, he or she would be unable to perform assigned tasks 20% of a given workday or one day per week.  The VE explained that there would not be any work in competitive employment for such worker (Tr. 407-408).

### III. MEDICAL EVIDENCE.

Psychologist Kriston E. Haskins, Psy. D., opined on February 27, 2002, that Plaintiff had a borderline intellectual functioning deficit.  The degree of functional limitation in the functional areas--activities of daily living and maintaining social functioning–that existed as a result of Plaintiff's mental disorder, was mild.  The degree of functional limitation that existed as a result of the impairment in the area of difficulty in maintaining concentration, persistence and pace was moderate (Tr. 186).  Dr. Haskins concluded that Plaintiff had no marked limitations in

4

understanding and memory, sustained concentration and persistence, social interaction and adaptation.  Plaintiff did have moderate limitations in the ability to:

(1)     Understand and remember detailed instructions.
(2)     Carry out detailed instructions.
(3)     Maintain attention and concentration for extended periods.
(4)     Perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances.
(5)     Sustain an ordinary routine without special supervision.
(6)     Complete a normal work week and work day without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

(Tr. 189-190).

On May 30, 2002, Plaintiff was treated at Community Health Partners (CHP), a preferred provider network of physicians and hospitals, for painful feet, edema and a lump on his left elbow. The attending physician attributed the foot pain and edema to possible gout and the lump in the elbow to possible fracture.  There was x-ray evidence of degenerative changes in the great toe. There was no evidence of fracture or dislocation.  Medication for inflammation and pain was prescribed (Tr. 141-145; www.chealthpartners.com).

Plaintiff presented to CHP on June 3, 2002, with complaints of vomiting blood.  Supine and erect views of the abdomen were obtained and the bowel gas pattern was not obstructed.  He was diagnosed with acute gastritis (Tr. 147-148, 153).

Plaintiff presented to CHP on July 29, 2002, with complaints of bilateral ankle pain and swelling.  He was prescribed an anti-inflammatory medication (Tr. 154-158).

Plaintiff complained that he was vomiting blood again on September 12, 2002.  He was treated for disease of the gastrointestinal tract.  The x-ray showed a normal bowel gas pattern and no abnormal calcifications.  There were small calcifications in the vein located in the pelvis (Tr.

159-165).

On November 15, 2002, Dr. A. K. Bhaiji, M.D., addressed the symptoms of gout which included painful feet and swollen ankles.  Based on the findings, Dr. Bhaiji opined that Plaintiff would not have difficulty sitting, may have difficulty standing and walking but no difficulty lifting, handling and carrying objects (Tr. 138-140).

On February 7, 2003, Dr. Bhaiji determined that Plaintiff could raise his shoulder, elbows, wrists, fingers, hips, knees and feet against maximal resistance (Tr. 167).  The range of motion in Plaintiff's cervical spine, shoulders, elbows, wrists, hands/fingers, dorsolumbar spine, hips, knees and ankles was within normal degrees (Tr. 168-169).

Dr. Thomas F. Zeck, Ph.D., a psychologist, conducted a clinical interview on February 17, 2003, after which he diagnosed Plaintiff with an adjustment disorder with depressed mood, borderline intellectual functioning, possible hypertension and moderate symptoms or moderate difficulty in social, occupational, or school functioning.  In addition, Dr. Zeck administered three tests below with the following results:

(1)     The Wechsler Adult Intelligence Scale-III (WAIS), an examination of adult intelligence.  Plaintiff's score on the WAIS placed him in the borderline range of intelligence classification.
(2)     The Wechsler Memory Scale (WMS), an examination of the structure of the brain and its association with memory function.  Plaintiff's score yielded a memory quotient that placed him one standard deviation below the mean in terms of his memory.
(3)     The Woodcock Reading Mastery Test (Woodcock), a test that measures reading achievement and comprehension.  The results of this assessment yielded a reading grade score of 2.8.

(Tr. 170-175; www.pearsonassessments.com.).

On May 17, 2004, Plaintiff presented to CHP with right arm pain.  He was officially diagnosed with acute exacerbation of gouty arthritis, a form of arthritis caused by deposits of

6

needle like crystals of uric acid (Tr. 193-194; http//arthritis.about.com).

Plaintiff presented to CHP on June 7, 2004 with a swollen right hand/left elbow.  These symptoms were attributed to acute gout.  Colchicine, a medication designed specifically for the pain of acute gouty arthritis, a synthetic steroid and a pain medication were prescribed to treat the symptoms (Tr. 199-207; www.nlm.nih.gov/medlineplus/druginfor/meds.).

On July 22, 2004, Plaintiff was prescribed an anti-inflammatory medication and pain reliever for right knee pain (Tr. 208-216).

Plaintiff's knees were swollen on August 21, 2004.  The x-rays showed joint effusion but no fracture or dislocation.  The hemolyzed specimen showed elevated uric acid composition.  The attending physician prescribed Colchicine and a pain reliever (Tr. 225, 228, 230).

Plaintiff presented to CHP on September 11, 2004, with left knee and ankle pain.  No acute pathology or fracture of the left ankle was noted.  There were minimal degenerative changes with joint effusion.  Plaintiff's white blood count, red blood cell distribution and platelet counts were all elevated.  In addition to addressing the symptoms of gout Plaintiff was treated for acute bronchitis (Tr. 232, 240, 241, 243).

Dr. Bhaiji evaluated Plaintiff on April 22, 2005, and concluded that although he had a limping gait, there was no use for an ambulatory aid.  It was Dr. Bhaiji's opinion that Plaintiff would not have difficulty with work-related physical activities such as sitting.  He would have difficulty walking, lifting, carrying and handling objects, particularly with his right hand (Tr. 244-246).  Dr. Bhaiji noted that Plaintiff could raise his shoulders, elbows, wrists, fingers, hips, knees and feet against maximal resistance (Tr. 247).  The range of motion in the cervical spine, shoulders, elbows, wrists, dorsolumbar spine,  hips and knees was normal.  The range of motion

in Plaintiff's wrists, hands/fingers and ankles was not (Tr. 249-250).

On May 11, 2005, Dr. James Patterson, M. D., consulted with Plaintiff about chronic rectal bleeding.  Dr.  Patterson noted that Plaintiff had an abnormally high level of uric acid in his bloodstream (Tr. 254-256).  On the following day, Plaintiff underwent a colonoscopy.  The results showed diverticulosis of the colon and an internal hemorrhoid (Tr. 253).  On May 13, 2005, Plaintiff underwent an esophagogastroduodenoscopy biopsy.  A hiatal hernia, antral gastritis and duodenitis were diagnosed as a result (Tr. 252).

Also on May 13, 2005, Dr. W. Jerry McCloud, M. D., opined that Plaintiff could:

(1)     Occasionally lift and/or carry twenty pounds,
(2)     Occasionally climb using a ramp or stairs,
(3)     Occasionally crouch,
(4)     Frequently lift and/or carry ten pounds,
(5)     Frequently crawl,
(6)     Stand and/or walk about six hours in an eight-hour workday,
(7)     Sit about six hours in an eight-hour workday.
(8)     Pushing and pulling were limited in the upper extremities.

Plaintiff was limited in his ability to handle, finger and feel with his right hand (Tr. 269-270).

On June 18, 2005, Dr. Daniel J. Holden, M. D., conducted a consultative examination. Plaintiff's symptoms were consistent with uncontrolled gout.  Red blood cells present in Plaintiff's urine raised the possibility of kidney stones.  Plaintiff was directed to continue the steroids (Tr. 277-278).

On June 19, 2005, the radiologist at CHP observed the presence of mild osteoarthritis in the left knee (Tr. 289).

On July 14, 2005, Plaintiff was treated for swelling in his left arm.  He was prescribed a pain reliever (Tr. 300).

8

On January 7, 2006, Plaintiff was treated for right leg pain and left arm pain.  The uric acid composition in Plaintiff's blood was extremely elevated.  Prescriptions for two anti-inflammatory medications were added to medication prescribed for treatment of gout (Tr. 305-306, 312).

On August 8, 2006, Plaintiff was treated for abdominal pain and vomiting.  Dr. Josef Korinek, M. D., determined that Plaintiff had a severe iron deficiency and anemia, most likely secondary to alcoholic gastritis and possible hypertension.  There was no evidence of abnormal bowel gas patterns or air or gas in the abdominal cavity.  There was no evidence of soft tissue mass or fluid collection within the pelvis.  He was concerned that in addition to the presence of amphetamines and antidepressants, Plaintiff's initial screening tested positive for cocaine and opiates (Tr. 315, 331, 339).

The chest x-ray taken on August 9, 2006, showed no evidence of disease (Tr. 328).  There was a high amount of uric acid in Plaintiff's blood stream (Tr. 329).

The results from the renal sonogram administered on August 10, 2006, were inconclusive.  The examiner could not identify the tiny lesion in the lower pole of the left kidney seen in the CT scan (Tr. 324).  The results from the liver/spleen scan showed no signs of simultaneous enlargement or filling defects (Tr. 326).

On August 12, 2006, Dr. Korinek performed an esophagogastroduodenoscopy and diagnosed Plaintiff with alcoholic erosive gastritis with duodenitis and hiatal hernia (Tr. 317).

Plaintiff was treated for a left wrist injury on June 1, 2007.  The treating source noted that Plaintiff had been non-compliant with medication prescribed to regulate the high pressure in the arteries (Tr. 347, 350).

**IV.  STEPS TO SHOWING ENTITLEMENT TO SOCIAL SECURITY BENEFITS.**

DIB and SSI are available only for those who have a "disability."  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007) (*citing* 42 U.S.C. § 423(a), (d); See also 20 C.F.R. § 416.920)). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id*. (*citing* 42 U.S.C. § 423(d)(1)(A) (definition used in the DIB context); See also 20 C.F.R. § 416.905(a) (same definition used in the SSI context)).  The Commissioner's regulations governing the evaluation of disability for DIB and SSI are identical for purposes of this case, and are found at 20 C.F.R. § 404.1520, and 20 C.F.R. § 416.920 respectively.  To assist clarity, the remainder of this decision refers only to the DIB regulations, except where otherwise necessary.

To determine disability under Sections 404.1520 and 416.920, a plaintiff must first demonstrate that he or she is not currently engaged in "substantial gainful activity" at the time her or she seeks disability benefits.  *Id*. (*citing Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)).

Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  *Id.*  A "severe impairment" is one which "significantly limits the claimant's physical or mental ability to do basic work activities.  *Id.*

Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience.  *Id*.

Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled.  *Id.*

For the fifth and final step, even if the plaintiff's impairment does prevent her from doing

10

her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.  *Id.* (*citing Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001)(internal citations omitted) (second alteration in original)).  If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates.  *Id.* (*citing* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)).

**V. THE ALJ'S FINDINGS**.

On April 11, 2008, the ALJ applied the governing five step analyses and determined that Plaintiff was not disabled.  Upon consideration of the evidence, the ALJ made the following findings:

At step one, the ALJ found that Plaintiff met the insured status requirements of the Act through March 31, 2009, and that he had not engaged in substantial work activity as defined at 20 C. F. R. § 404.1572, since May 1, 2004, the alleged onset date.

At step two, the ALJ found that Plaintiff had the following severe impairments:

(1)  Borderline intellectual functioning (Exhibit 7F, 10E);
(2)  Gouty arthritis (Exhibit 18F2-6, 11F4);
(3)  Poly substance abuse (Exhibits 22F2-3, 4, 110, 15F);
(4)  Adjustment disorder (Exhibit 7F); and
(5)  A reading disorder (Exhibit 7F).

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C. F. R. Part 404, Subpart P, Appendix 1 (20 C. F. R. §§ 404.1525 and 404.1526).

At step four, the ALJ found that Plaintiff had the residual functional capacity to perform a full range of light work, except Plaintiff was able to lift, carry, push and pull up to ten pounds frequently and no more than twenty pounds occasionally; sit up to six hours in an eight-hour work

11

day; stand and walk up to six hours in an eight-hour work day; perform more than simple routine work with no high production quotas or piece work; perform work that involves "no more superficial interaction with co-workers and the general public without negotiation or confrontation;" perform no more than frequent bilateral handling, fingering and feeling; perform occasional climbing of ramps and stairs with no climbing of ladders, ropes or scaffolds and perform frequent stooping, kneeling, crawling and occasional crouching.

At step five, the ALJ found that Plaintiff, a younger individual aged 18 -49, with at least a high school education and the ability to communicate in English, could not perform any past relevant work. There were, however, jobs that existed in significant numbers in the national economy that Plaintiff could perform.

The ALJ concluded that Plaintiff was not under a disability, as defined in the Act, from May 1, 2004, through the date of his decision.

(Tr. 17-23).

## VI. STANDARD OF REVIEW.

Title 42 U.S.C. § 405(g) permits the district court to conduct judicial review over the final decision of the Commissioner. *McClanahan v. Commissioner of Social Security,* 474 F.3d 830, 832-833 (6th Cir. 2006). Judicial review is limited to determining whether there is substantial evidence in the record to support the ALJ's findings of fact and whether the correct legal standards were applied. *Elam ex rel. Golay v. Commissioner of Social Security*, 348 F.3d 124, 125 (6th Cir. 2003) (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

This Court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact

unsupported by substantial evidence in the record. *Longworth v. Commissioner Social Security Administration*, 402 F.3d 591, 595 (6th Cir. 2005) (*citing Warner v. Commissioner of Social Security,* 375 F.3d 387, 390 (6th Cir.2004) (*quoting Walters v. Commissioner of Social Security,* 127 F.3d 525, 528 (6th Cir. 1997)). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 241 (6th Cir. 2007).

In deciding whether to affirm the Commissioner's decision, it is not necessary that the court agree with the Commissioner's finding, as long as it is substantially supported in the record. *Id.* (*citing Her v. Commissioner of Social Security,* 203 F.3d 388, 389-90 (6th Cir. 1999)). The substantial evidence standard is met if a "reasonable mind might accept the relevant evidence as adequate to support a conclusion." *Longworth, supra,* 402 F. 3d at 595 (*citing Warner, supra*, 375 F.3d at 390) (*citing Kirk v. Secretary of Health & Human Services,* 667 F.2d 524, 535 (6th Cir. 1981) *cert. denied*, 103 S. Ct. 2478 (1983) (internal quotation marks omitted)). If substantial evidence supports the Commissioner's decision, this Court will defer to that finding "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Id.* (*citing Warner,* 375 F.3d at 390) (*quoting Key v. Callahan,* 109 F.3d 270, 273 (6th Cir. 1997)).

## VII. DISCUSSION.

Plaintiff argues that:

(1)    The ALJ failed to articulate valid reasons for discounting his credibility.
(2)    The Commissioner did not meet the burden of proof at step five of the sequential evaluation by failing to advance an accurate hypothetical.

13

In response, Defendant argues that:

(1) The ALJ properly rejected Plaintiff's proffered reasons for noncompliance with treatment.

(2) The hypothetical question posed to the VE incorporated all relevant work-related limitations.

**1.    CREDIBILITY.**

Plaintiff contends that the ALJ's credibility determination is exclusive of the evidence as a whole by arguing that: the ALJ's credibility determination hinged on Plaintiff's alleged failure to follow his physician's advice and take his medication and the ALJ failed to consider that Plaintiff could not afford his medication and he obtained samples from the hospitals after treatment to sustain his drug therapy.  Plaintiff contends that the ALJ failed to assess his credibility and include these factors.

The ALJ, not the reviewing court, evaluate the credibility of witnesses, including that of the claimant.  *Rogers, supra*, 486 F.3d at 247 (*citing Walters v. Commissioner of Social Security,* 127 F.3d 525, 531 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Kirk, supra,* 667 F.2d at 538)).  However, the ALJ is not free to make credibility determinations based solely upon an "intangible or intuitive notion about an individual's credibility."  *Id.* (*citing* TITLES II AND XVI: EVALUATION OF SYMPTOMS IN DISABILITY CLAIMS: ASSESSING THE CREDIBILITY OF AN INDIVIDUAL'S STATEMENTS, SOCIAL SECURITY RULING (SSR) 96-7p, 1996 WL 374186, at * 4 (July 2, 1006)).  Rather, such determinations must find support in the record.  *Id.*  Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must make a determination of the credibility of the claimant in connection with his or her complaints "based on a consideration of the entire case record."  *Id.*  The entire case record includes any medical signs and lab findings, the claimant's own complaints of

14

symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record.  Consistency of the various pieces of information contained in the record should be scrutinized.  *Id.* at 248.  Consistency between a claimant's symptom complaints and the other evidence in the record tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect. *Id.*

SSR 96-7p also requires the ALJ explain his or her credibility determinations in the decision such that it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."  *Id.*  In other words, blanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence.  *Id.*

In the present case, the ALJ's consideration of Plaintiff's complaints and assessment of his credibility is readily identifiable in the decision.  The ALJ states five reasons for finding that Plaintiff's complaints and alleged limitations were not credible.  First, he points out that there was a lack of "objective" medical evidence that Plaintiff's impairments were of the severity to be disabling.  Second, he explained that Plaintiff's symptoms were controlled on medication but that Plaintiff was non-compliant with the medication.  Third, even if Plaintiff had no insurance and was given free samples of his medication, he had money to support longstanding substance and nicotine disorders.  Fourth, the medical evidence showed that Plaintiff had bilateral limitations due to gout; however, the ALJ concluded based on the evidence that if Plaintiff followed the prescribed treatment, his ability to work would be restored.  Fifth, Plaintiff's allegations of his functional

15

limitations were not consistent with the medical evidence or the ALJ's observations at the hearing (Tr. 20-22).

In sum, the credibility determination made by the ALJ is not made based on intuition or intangible notions about Plaintiff's symptoms.  Neither is it arbitrarily made.  The decision to discount Plaintiff's credibility to a certain degree emanates from the contradictions found among the medical reports, Plaintiff's testimony and other evidence.  Since the decision contains specific reasons for the finding on credibility, supported by the evidence in the case record, the Magistrate cannot disturb the amount of weight given to Plaintiff's statements, the reasons for the weight or the conclusions drawn therefrom.

2.      **HYPOTHETICAL QUESTION.**

Plaintiff also argues that the ALJ failed to pose a hypothetical question to the VE that included Plaintiff's age, education and past relevant work.

In order for a VE's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments.  *Dippel v. Commissioner of Social Security*, 2011 WL 976610, *10 (N. D. Ohio 2011) (*citing Ealy v. Commissioner of Social Security*, 594 F.3d 504, 516 (6th Cir. 2010) ( *see Howard v. Commissioner of Social Security*, 276 F.3d 235, 239, 241 (6th Cir. 2002); *see also Webb v. Commissioner of Social Security*, 368 F.3d 629, 633 (6th Cir. 2004) (though an ALJ need not list a claimant's medical conditions, the hypothetical should provide the vocational expert with ALJ's assessment of what the claimant "can and cannot do.").  In order for a VE's testimony in response to a hypothetical question to be substantial evidence in support of an ALJ's opinion denying benefits, the question must accurately encompass a claimant's

16

mental or physical limitations.  *Id.* (*citing Surma v. Commissioner of Social Security*, 2010 WL 3001908, *4 (N. D. Ohio 2010) (*citing Webb*, *supra*, 368 F.3d at 633) (holding that enumerated medical ailments are unnecessary in a hypothetical posed to a VE). The only limitations that need to be included, however, are the ones that the ALJ finds "credible."  *Id.* (*See Infantado v. Astrue*, 263 Fed. Appx. 469, 477 (6th Cir. 2008) (*citing Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

The Magistrate acknowledges that the ability to communicate is an important skill in considering what jobs, if any, are available to a claimant and illiteracy impacts a claimant's ability to perform work related functions.  The evidence shows that Plaintiff's reading recognition and reading comprehension never exceeded a fourth grade level (Tr. 127-133).  However the ALJ included this limitation in the hypothetical posed to the VE when he asked that the VE consider that Plaintiff had a "high school special education."  The VE clarified Plaintiff's past relevant work history prior to being asked the hypothetical question.  The VE included this history in assessing whether Plaintiff could perform other work (Tr. 405-406).  The hypothetical question posed to the VE accurately portrayed Plaintiff's mental capabilities to the extent that the ALJ found them credible.

The ALJ followed the rules and his decision to rely on the response of the VE to the properly formed hypothetical was not error.  The Magistrate does not disturb these findings.

### VIII. CONCLUSION

For the foregoing reasons, the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

17

/s/ Vernelis K. Armstrong
United States Magistrate Judge

Date: September 2, 2011